## N. C. CONE v. J. H. BELCHER ET AL.

### Decided November 13, 1909.

**1.—Fraudulent Conveyance—Gift to Wife—Increase of Cattle.**

The issue being whether or not certain land levied upon as community property, was in fact community property or the separate property of the wife because bought with the proceeds of the increase of cattle which were the separate property of the wife, said increase having been given to her by a debtor husband, evidence, as to the solvency of the husband at the time of this gift, considered, and held to require the submission of the issue to the jury, and a peremptory instruction by the court was reversible error.

**2.—Same—Statute Construed.**

Under the provisions of article 2545, Batts' Civ. Stats. a conveyance not upon a valuable consideration is prima facie void as to prior creditors and the grantee therein has the burden of proving that the grantor possessed at the time property within this State subject to execution sufficient to pay his existing debts; and by the words "subject to execution" is meant that the grantor retained the open and visible ownership of property of such value that when subjected to forced sale it would yield a sufficient sum to pay all existing debts and the costs of collection.

**3.—Practice—Peremptory Charge.**

A party introducing evidence sufficient to support a verdict in his favor is entitled to have the issue submitted to the jury, however strong the contradictory evidence might be, and in determining the propriety of directing a verdict the evidence must be viewed from a standpoint most favorable to such party, disregarding conflicts and contradictions.

**4.—Fraudulent Conveyance—Gift—Husband and Wife.**

An agreement by a husband to give to his wife the increase of her cattle can have no effect as against existing creditors of the husband after the time the husband became insolvent, and the placing of the wife's brand upon such increase after the date of insolvency will not render the gift valid.

Error from the District Court of Eastland County. Tried below before Hon. F. S. Bell, Special Judge.

*Stubblefield & Patterson,* for plaintiff in error.—As against defendant, an attaching creditor of plaintiff's husband, plaintiff is not precluded from proving that land conveyed to her during coverture, not specifically described as her separate estate, is separate and not community property, and if there be any evidence offered in support thereof it is error for the court to withdraw such issue from the jury. Sinsheimer v. Kahn, 24 S. W., 533 (see this case also for collation of authorities); Hunt v. Matthews, 60 S. W., 674; Mexia v. Lewis, 34 S. W., 158; Speer on Married Women, secs. 80, 81, 83 and 85; Maddox v. Summerlin, 92 Texas, 486.

If there is any evidence, although slight, which has a tendency to establish an issue, it is the duty of the court to submit it to the jury, and this is the case even if the court should be required to set the judgment aside as being against the weight of the evidence. Texas Brokerage Co. v. Barkley, 109 S. W., 1001; Harpold v. Moss, 109 S. W., 928; Eastham v. Hunter, 86 S. W., 323; Fitzgerald v. Hart, 17 S. W., 369.

*Earl Connor* and *J. J. Butts,* for defendant in error.

CONNER, Chief Justice.—Plaintiff in error instituted this suit to enjoin the sale of two hundred and sixty acres of the south one-half of section 507, and the southeast one-fourth, and the southwest one-fourth of section 508, S. P. R. R. surveys, in Eastland County, upon all which there had been a levy of an execution issued out of the County Court of said county, by virtue of a judgment in favor of J. H. Belcher, against W. R. Cone, the husband of plaintiff in error, and others, for the sum of about fourteen hundred and seventy-five dollars. Plaintiff in error claims the two hundred and sixty acres of section 507 and the southwest one-fourth of section 508 as her separate property, and the southeast one-fourth of section 508 as a part of her homestead. She alleged facts showing that the title to her separate property was dependent in part upon matter not of record, and sought to attack the validity of the execution and judgment upon which it was based on the ground that the judgment was one rendered in an action purporting to revive a judgment of said County Court theretofore rendered for six hundred and eighty-three dollars and sixty-three cents, and that the parties necessary to such revival had not been brought before the court, in that the Farmers' Alliance Milling Company, one of the original defendants, and certain heirs of C. J. Stephens, deceased, also an original defendant, had not been made parties to the *scire facias* proceeding.

Upon the conclusion of the testimony the court peremptorily instructed the jury to return a verdict for appellees, except as to such portions of the land in controversy as they might find to be the homestead of plaintiff and her husband, W. R. Cone, not to exceed two hundred acres of land, which the jury were required to designate and specify in their verdict.

We think the court erred, as assigned, in giving the peremptory instruction. There was evidence on the part of both plaintiff in error and W. R. Cone, to the effect that soon after their marriage, some thirty years before the trial, plaintiff in error acquired a few cattle, and that it was specifically agreed between husband and wife that the increase of such cattle should be the separate property of the wife; that the cattle brand of W. R. Cone was "Cone;" that all increase of the wife's separate cattle were branded "Cone-K;" that about the year 1900 W. R. Cone sold all of the cattle, then situated in Sutton County, in both brands; that the "Cone-K" cattle brought about fourteen hundred and fifty dollars, which was invested by plaintiff in error in said southwest one-fourth of section 508; that the proceeds of the "Cone" cattle amounted to about twenty-five hundred dollars, one-half of which W. R. Cone gave to his wife as her part of the community interest in

the Cone cattle; this twelve hundred and fifty dollars was invested in said two hundred and sixty acres out of section 507.

The least that can be said of this testimony is that it tends to show such gift on the part of W. R. Cone to his wife as will invest her with the separate interest she claims, unless restrained by our statute regulating voluntary conveyances. This statute provides: "Every gift, conveyance, assignment, transfer or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not on that account merely be void as to subsequent creditors, and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers."

In construing this article our Supreme Court, in Maddox v. Summerlin, 92 Texas, 483, held that a conveyance not upon a valuable consideration is made *prima facie* void as to prior creditors, and that one claiming under it has the burden of proving that the grantor possessed property within the State subject to execution sufficient to pay his existing debts. And in Walker & Lybrook v. Loring, 89 Texas, 668, that the words in the statute, "subject to execution," mean not only that the property should be such as may be legally levied upon and sold by the sheriff, but that it should also be such as is actually capable of being levied upon, the meaning of the statute being that the grantor must retain property, of which he has the open and visible ownership, of such value that when subjected to forced sale it will yield a sufficient sum to pay all existing debts, as well as the taxable costs of the collection. It was also held in the latter case that the ownership of property, the title to which was concealed from creditors, can not be taken into account in determining whether the grantor retained sufficient assets to meet the just demands of his creditors.

Pretermitting a discussion of the objections to the judgment in the suit to revive the original judgment, the judgments together tend to show that appellee Belcher was a creditor of W. R. Cone at and prior to the sale of the Cone and Cone-K cattle in Sutton County. The evidence also shows that the Cone cattle while in Sutton County were held in the names of persons other than W. R. Cone with the purpose of avoiding the payment of said original judgment. But W. R. Cone testified, among other things, as follows: "We sold the cattle down in Sutton County in 1898. . . . At the time I sold out those cattle down there in Sutton County there were about 600 head of my brother's cattle, mine and all, and we sold for $14.50 a head; and there were about half of them that belonged to me and my wife, which brought a total of $4,350, and I think about $2,500 was paid in cash and the rest in notes. At that time I had other cattle in Eastland County—I guess some seventy-five head on the range; I was dealing in cattle at the time. I was acquainted with the market value of cattle here at that time, and it was in this county about $15 per head. At that time I don't know that I had any other debts at all except this old security debt on the Farmers' Alliance Milling Company judgment; if I did they were mighty small

—might have owed some $15 or $25; I did not owe any other indebtedness that amounted to anything except this judgment; the judgment amounted at that time I think to about $500. . . . The cattle I left up here in Eastland County were run in my name. The sheriff did not come along about that time and call on me for any property subject to execution, and never did. . . . I continued to run these cattle I had in Eastland County at that time in my name and in my brand just because I had them here, and no one ever bothered or ever molested them. . . . Of the property sold down there in Sutton County, I gave my wife half of the proceeds of the community cattle, and there were three hundred head about, which would make her part probably about $2,175. That was in 1898 or 1899. It is not a fact that I sold those cattle and invested the proceeds in land in my wife's name to defeat that judgment; I had stuff they could get at—cattle right here on the range—stuff that could have paid the judgment. I was not buying cattle up in this country at the time I had these seventy-five head; I raised these cattle here, and they were left on the range, and I still raise cattle here—out on the open range."

This testimony, we think, at least raises the issues of whether W. R. Cone made the gifts to his wife as he testifies, and if so, whether at the time he was possessed of property within this State subject to execution sufficient to pay his existing debts within the meaning of the statute quoted. If so, the court should have submitted the issues to the jury, for the rule is well established that where there is any evidence upon an issue raised by the pleadings, it is the duty of the court to submit the issue to the jury. (Citizens' Railway Company v. Griffin, 49 Texas Civ. App., 569, and authorities there cited.) It is true that appellee introduced the record of marks and brands showing that the Cone brand was registered in the name of J. S. Cone and not W. R. Cone; that W. R. Cone for the years 1897, 1898, 1899 and 1901, rendered for taxation only the southeast one-fourth of section 508, claimed in this suit as part of the homestead; two mules at forty dollars; five cattle at fifty dollars, and one wagon or buggy at twenty-five dollars, but this was not, as matter of law, conclusive. The rule is that a party having introduced sufficient evidence to support a verdict in his favor is entitled to have the issue submitted to the jury, however strong the contradictory evidence may be, and that in determining the propriety of directing a verdict the evidence must be considered most favorable to plaintiff in error, disregarding conflicts and contradictions. See Harpold v. Moss, 101 Texas, 540. We therefore conclude that the court should not have taken the indicated issues away from the jury.

The questions raised on demurrer relating to supposed irregularities in the judgment are, we think, wholly immaterial on this appeal. If plaintiff in error establishes her allegations in reference to the homestead and of her plea of separate interest, she will be entitled to recover regardless of the form or effect of the judgment. Should she fail in this, then to the extent of such failure there would be no right of action in plaintiff in error, for all property not found to be separate would be community property, and as to this the husband alone can sue, and he is not complaining of the judgment in this suit. (Speer on Law of Married Women, sec. 287; Maddox v. Summerlin,

92 Texas, 483.)    At all events, the judgments were admissible in evidence on the issue of whether defendant in error Belcher was a creditor of W. R. Cone at and prior to the time the latter made the asserted gifts to his wife.

In this connection, and in view of another trial, we should, perhaps, also say that the agreement of W. R. Cone and wife can not control our statute defining community property.  It can be given no greater effect than to vest in Mrs. Cone separate right to all such of the Cone-K cattle as were so branded prior to W. R. Cone's failure, if any, to be possessed of sufficient property subject to execution to pay his existing debts.  The imposition of the Cone-K brand on increase of cattle after that period as against existing creditors of W. R. Cone could amount to no more than a gift.

For the error discussed in the court's peremptory charge it is ordered that the judgment be reversed and the cause remanded.

*Reversed and remanded.*